**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**RAYMOND C. MILLER, SR.**,

                         Plaintiff,

      - v -                                     Civ. No. 9:10-CV-00983
                                                        (NAM/RFT)

**RANDY BOUCHARD**, *Jail Administrator, St. Lawrence County Correctional Facility*, **DAN DOMINIE**, *Assistant Jail Administrator*, **PEGGY HARPER**, *Sergeant/Grievance Coordinator, St. Lawrence County Correctional Facility*,

                         Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

**RAYMOND MILLER, SR.**
Plaintiff, *Pro Se*
11-A-5212
Attica Correctional Facility
Box 149
Attica, New York 14011

**HANCOCK ESTABROOK LAW FIRM**         **ZACHARY M. MATTISON, ESQ**
Attorneys for Defendants                        **JOHN L. MURAD, JR., ESQ**
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13221

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      Plaintiff Raymond Miller, proceeding *pro se* and *in forma pauperis*, brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants, employees at the St. Lawrence County Correctional Facility (hereinafter "SLCCF"), violated his free exercise rights under the First Amendment by restricting his ability to practice Islam. *See generally* Dkt. No. 1, Compl. Defendants move for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, on the

grounds that Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation and Reform Act ("PLRA"),[1] his claims are without merit, and his claims for injunctive relief are moot because he has been transferred to a different facility. *See generally* Dkt. No. 43, Defs.' Mot. Summ. J. Despite being provided an extension of time, Plaintiff has not responded to Defendants' Motion. *See* Text Order, dated Mar. 28, 2012; Dkt. No. 48, Defs.' Lt.-Brief, dated May 9, 2012. For the reasons that follow, we recommend that Defendants' Motion for Summary Judgment be **GRANTED.**

## I. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts

---

[1] The PLRA is codified at 42 U.S.C. § 1997e, *et. seq.*

showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56(c). Because Plaintiff has failed to raise any question of material fact, the Court will accept facts as set forth in Defendants' Statement of Facts (Dkt. No. 43-1, hereinafter "7.1 Statement"), supplemented by Plaintiff's verified Complaint (Dkt. No. 1), as true. *See Lopez v. Reynolds*, 998 F. Supp. 252, 256 (W.D.N.Y. 1997).

### B. Summary of Facts

On or about April 21, 2010, Plaintiff, a Muslim inmate at SLCCF, received his Kufi. Compl. at ¶ 6. On May 26, 2010, Plaintiff was told by Defendants Bouchard and Dominie that per SLCCF Policy he was only allowed to wear his Kufi while he was in his cell. *Id.*; Dkt. No. 43-3, SLCCF Inmate Grievance Form Part I (hereinafter "Grievance Form I"), dated June 28, 2010. Plaintiff wrote to Defendants Bouchard and Dominie requesting that they speak with him about this policy and explaining that he could not wear his Kufi in his cell because Muslims do not wear their Kufi where they use the bathroom and there was a bathroom in Plaintiff's cell. Compl. at ¶ 6Instead of speaking directly with Plaintiff, they sent him a note confirming that he could only wear his Kufi inside of his cell. *Id.*

At the time Plaintiff was incarcerated at SLCCF, the Inmate Grievance Procedure at the facility was as follows: (1) within five days of the occurrence giving rise to the grievance the inmate must file a grievance; (2) the Facility Grievance Coordinator would then investigate and issue a written decision on the grievance within five business days after its receipt; (3) if dissatisfied with

the grievance coordinator's decision, the inmate could appeal that decision to the jail administrator within two business days after receipt of the initial determination; (4) the jail administrator would then investigate and issue a written decision on the grievance within five business days after its receipt; (5) if dissatisfied with the jail administrator's decision, the inmate could appeal that decision to the Citizens Policy and Complaint Review Counsel ("CPCRC") within three business days after receipt of the jail administrator's determination; and (6) CPCRC would issue a determination on the appeal within forty-five business days of receipt. *See* Dkt. No. 43-7, SLCCF INMATE RULES AND REGULATIONS MANUAL, effective Aug. 24, 2009, at pp. 34–35 (hereinafter "SLCCF Grievance Procedure"); *see also* N.Y. COMP. CODES R. & REGS. tit. 9, §§ 7032.4 & 7032.5.

On June 28, 2012, Plaintiff filed a grievance requesting that he be allowed to wear his Kufi and observe his five daily prayers outside of his cell, and that the facility provide a Muslim Imam to hold Jumah Services on Fridays and help prepare Plaintiff for his religious fast in August (Ramadan). *See* Grievance Form I. That same day, Defendant Harper, the Facility Grievance Coordinator, decided Plaintiff's grievance, determining: (1) that in the interest of safety and security, SLCCF's regulations required Plaintiff not to wear his Kufi or conduct his five daily prayer rituals outside of his cell, however he would be allowed to cover his toilet with a temporary barrier or cover; (2) it was not practicable to have an Imam come to a remote location like SLCCF to service the needs of the facilities two Muslim inmates however, Plaintiff was provided with religious materials and the name and contact information of a religious advisor; and (3) the facility would provide Plaintiff with a special diet sufficient to meet his "reasonable religious dietary needs." Dkt. Nos. 43-2, Peggy Harper Decl., dated Mar. 14, 2012, at ¶¶ 13–15 & 43-4, Harper Ex. 2, Inmate Grievance Form Part II (hereinafter "Grievance Form II"), dated June 28, 2010, at p. DEF-0008.

Plaintiff appealed Defendant Harper's determination to the Jail Administrator, Defendant Bouchard, who affirmed Defendant Harper's determination on June 30, 2010. Grievance Form II at p. DEF-0008. Plaintiff appealed Defendant Bouchard's determination to the CPCRC on the same day, which was received by the CPCRC on July 6, 2010. *Id.* at p. DEF-0009; Harper Decl. at ¶¶ 16 & 17. Plaintiff filed his Complaint on July 28, 2010. *See* Compl.[2] The CPCRC issued its final decision on September 22, 2010, determining that Plaintiff could wear his Kufi outside of his cell, but otherwise upheld the prior determinations made by Defendant Harper. Dkt. No. 43-6, Harper Ex. 4, Lt., dated Sept. 22, 2010 (hereinafter "CPCRC Determination").

### C. Exhaustion

The PLRA provides, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money

---

[2] A *pro se* prisoner's civil complaint is deemed filed when the prisoner delivers it to prison officials for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (*opinion modified on other grounds*) 25 F.3d 81 (2d Cir. 1994).

damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

According to the Supreme Court, exhaustion in the context of the PLRA means "proper exhaustion" as that term is understood in the administrative law context. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[P]roper exhaustion of administrative remedies [] means using all steps that the agency holds out, and doing so *properly* . . . [including complying] with an agency's deadlines and other critical procedural rules." *Id.* at 90. Therefore, "we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) & *Woodford v. Ngo*, 548 U.S. at 88–90).

In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed district courts to ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Singh v. Goord*, 520 F. Supp. 2d 487, 495–96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

In his Complaint Plaintiff raised four issues: (1) his inability to wear a Kufi outside of his cell; (2) his inability to perform his five daily prayers outside his cell; (3) the lack of an Imam at the Facility to perform Friday Jumah Services; and (4) that he is only allowed to use his prayer rug inside of his cell. *See generally* Compl. Copies of Plaintiff's grievances and appeals clearly show

that he had complained to the facility about the first three issues, however, there is nothing on the record to suggest that he ever filed a grievance regarding restrictions on the use of his prayer rug outside of his cell. Dkt. Nos. 43-3–43-5, Harper Exs. 1-4 (copies of Plaintiff's Grievances and Appeals (collectively referred to hereinafter as "Grievance R."). These records also clearly demonstrate, and Defendants concede, that Plaintiff timely and properly advanced his grievance through each of the initial stages of SLCCF's Grievance Procedure, and that he also filed his final appeal with the CPCRC on July 6, 2010, before commencing the instant action on July 28, 2010. *See* Harper Decl. at ¶¶ 11–12 & 16–17; Grievance R. Defendants now argue that even though Plaintiff properly advanced his grievance and filed his final appeal before filing the instant action, he nonetheless failed to properly exhaust those issues by filing his Complaint before the CPCRC issued its final decision. *See generally* Defs.' Mem. of Law. Additionally, Defendants argue that Plaintiff should be precluded from raising the issue regarding restrictions on the use of his prayer rug because he failed to exhaust that claim by never grieving it at all. *Id.* We agree with Defendants.

It is incontrovertible that Plaintiff has failed to exhaust his claim regarding the prayer rug. Not only did Plaintiff fail to grieve this issue, he failed to do so before being transferred out of SLCCF. *See* Dkt. No. 46, Lt. (indicating Plaintiff's address at Attica Correctional Facility); Harper Decl. at ¶ 19. Furthermore, it is clear that Plaintiff was aware of, understood, and had access to SLCCF's Grievance Procedure. The Prison provided him with a copy of the Grievance Procedure prior to entering the facility, and Plaintiff had successfully grieved other issues. *See* Harper Decl. at ¶ 10; SLCCF Grievance Procedure; Grievance R. Moreover, Defendants properly pled the affirmative defense of exhaustion in their Amended Answer, Dkt. No. 19 at ¶ 28, and Plaintiff has

not provided any facts which lead us to believe that Defendants in any way inhibited his ability to take advantage of the Grievance Procedure, or that any special circumstance warrants dismissal of the exhaustion requirement, *see Singh v. Goord*, 520 F. Supp. 2d at 495–96. For these reasons, we recommend that Plaintiff's claim regarding his inability to freely use his prayer rug be **DISMISSED WITH PREJUDICE**. *See Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004) (finding it appropriate to dismiss inmates un-grieved claim with prejudice where exhaustion had become futile because prisoner had transferred out of the facility where the events giving rise to the grievance occurred without first taking advantage of the administrative remedies available at that facility).

Moreover, having failed to await the results of his final appeal, Plaintiff has failed to exhaust those claims which he did raise in his grievance. The Supreme Court has made it clear that the purpose of the exhaustion requirement is to afford the correctional facility the opportunity to address the complaint internally "on the merits," providing the facility with the opportunity to remedy the situation without the need for litigation, and in turn reducing the quantity and improving the quality of prisoner suits *See Woodford v. Ngo,* 548 U.S. at 90 & 94 (citation omitted). However, "the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id.* at 95. That is, exhaution should be both **procedural and substantive**. *Amador v. Andrews*, 655 F.3d 89, 104 (2d Cir. 2011). Thus, we recommend **GRANTING** Defendants' Motion for Summary Judgment on the ground that Plaintiff failed to exhaust his claims.

However, where the underlying claims have no merit, this Court may dismiss it with prejudice despite the failure to exhaust. 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."). As discussed below, out of an abundance of caution we have reviewed and found Plaintiff's claims to be without merit. Therefore, we recommend that Defendants' Motion for Summary Judgment be **GRANTED**.

### D. Free Exercise Claims

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. AMEND. I. These provisions are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (cited in *Wares v. Vanbebber*, 319 F. Supp. 2d 1237, 1243 (D. Kan. 2004)). Prisoners retain their right to religious freedom even when incarcerated. *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). An inmate is entitled to a reasonable accommodation of his religious beliefs. *See id.* (citing *Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992); *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975)).

The Supreme Court has held that when a prison policy violates a prisoner's constitutional rights, courts should employ a reasonableness test, as opposed to a stricter standard which would normally be applied in constitutional deprivation cases. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Therefore, a prison regulation that impinges upon an inmate's constitutional rights may be valid, despite such encroachment, if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. at 89; *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988). The underlying purpose of the implementation of a lower standard is congruous with the notion that "evaluation of penological objectives is committed to the

considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone v. Estate of Shabazz*, 482 U.S. at 349 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). The Second Circuit has directed courts faced with constitutional free exercise claims to first assess,

> (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective.

*Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988); *see also Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002) ("An individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.") (internal quotation marks and citations omitted) (quoted in *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)).

We find Plaintiff's surviving issues as follows: (1) that he was prohibited from wearing his Kufi outside of his cell; (2) that he has no place to perform his five daily prayer rituals; and (3) that the prison failed to provide him with a Muslim Imam to facilitate Friday Jummah Services. *See supra* Part I.C; Compl. at ¶ 6.

The essence of Plaintiff's claims is that under SLCCF regulations he is prohibited from praying or wearing his Kufi while outside of his cell, and because there is a bathroom in his cell, he is likewise unable to pray or wear his Kufi inside his cell, effectively leaving him nowhere to practice his five daily prayer rituals or wear his Kufi. *See* Compl. at ¶ 6; Grievance Form I. Additionally, he claims that because there is no Imam at the prison he is unable to attend Friday Jumah Services. Compl. at ¶ 6. Nonetheless, Defendants argue that the policies at issue here are reasonable and are rationally related to protecting SLCCF's legitimate penological interests in safety, security, and efficiency. *See* Defs.' Mem. of Law at pp. 14–19.

We have little doubt that Plaintiff's beliefs are religious in nature and sincerely held.

Plaintiff has averred that it is his religious belief that Muslims should not wear their Kufi "where [they] use the bathroom," and that Muslims do not pray "where [they] urinate or defecate." Compl. at ¶ 6. Likewise, Plaintiff has claimed that it is "a religious obligation for us Muslims" to attend Friday Jumah Services, and that it is his religious practice to wear a Kufi and pray five times a day. *Id.* Defendants have not contested the sincerity of Plaintiff's beliefs nor whether they are religious in nature. Providing Plaintiff with the benefit of every doubt, and in the absence of any evidence to suggest otherwise put forth by Defendants, we find that Plaintiff has at the very least stated a viable claim, and the burden now shifts to Defendants to establish that the policies which led to these deprivations were reasonable and rationally related to some legitimate penological interest. *See Farid v. Smith*, 850 F.2d at 926; *see also Fifth Ave. Presbyterian Church v. City of New York* 293 F.3d at 574.

The Supreme Court has enumerated various factors for courts to consider when ruling upon the reasonableness of a prison policy which allegedly impedes or interferes with a prisoner's constitutional rights:

> [1] there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it [citation omitted][;]
> [2] whether there are alternative means of exercising the right that remain open to prison inmates[;]
> [3] the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]
> [4] the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

"[O]nce prison officials put forward a legitimate penological interest to justify an infringement upon a prisoner's religious free exercise, the burden remains with the prisoner to 'show that these [penological] concerns were irrational.'" *Ford v. McGinnis*, 352 F.3d at 595–96 (quoting

*Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989)).

Defendants argue that facilitating Plaintiff's request to provide an Imam to host Friday Jumah Services would significantly burden the facility. Defs.' Mem. of Law at p. 18. In support of this contention Defendants have provided concrete factual information; namely that at the time Plaintiff was incarcerated at SLCCF there were only two practicing Muslim inmates at the facility, and, due to SLCCF's remote location, neither the New York State Correctional Imam, nor any other Imam, were able to visit the facility. *See* Harper Decl. at ¶¶ 13–15.

It is axiomatic that a prison has a legitimate penological interest in effectively managing its expenses and other resources. *See Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006). Given the relatively low demand, the unavailability of an Imam, and the remoteness of SLCCF, the Prison's decision to provide Plaintiff with religious materials and contact information for a religious advisor rather than pay the expense of bringing an Imam to the facility appears not only rationally related to promoting SLCCF's legitimate penological interests, but also quite reasonable. Indeed the Supreme Court has observed that not "every religious sect or group within a prison – however few in number – must have identical facilities or personnel . . . nor must a chaplain, priest or minister be provided without regard to the extent of the demand." *Cruz v. Beto*, 405 U.S. 315, 322 n.2 (1972). Thus we are satisfied that Defendants have met their burden, and the burden now shifts back to Plaintiff to prove that the policy was irrational. *See Ford v. McGinnis*, 352 F.3d at 595–96.

In the face of Plaintiff's silence on the issue, we have no reason to believe that the religious materials or the religious advisor Defendants provided to him was an unreasonable or inadequate alternative means for Plaintiff to receive the religious guidance that he requested. *See Jackson v. Mann*, 196 F.3d at 320 (noting that prisoners are entitled to "reasonable accommodation of [their]

religious beliefs"). We cannot think of, and Plaintiff has not suggested any other reasonable alternative leading us to conclude that the solution provided by Defendants is appropriate under the circumstances. *See Turner v. Safely*, 482 U.S. at 89–91. For these reasons, we recommend Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's Jummah claim.

Plaintiff also claims that his First Amendment free exercise rights have been unconstitutionally infringed upon by Defendants' policies restricting his ability to wear his Kufi and pray outside of his cell. The essence of Plaintiff's claims appears to be that these policies have left him with no viable place to pray or wear his Kufi. *See generally* Compl; Grievance R. In an attempt to accommodate Plaintiff's religious needs, Defendants contacted a local Imam to discuss ways to make it possible for Plaintiff to pray in his cell notwithstanding the presence of the toilet. As a result of that discussion they provided Plaintiff with a temporary barrier or shield that could be placed over the toilet while Plaintiff was praying. Harper Decl. at ¶ 13. Furthermore, Defendants argue that their policies prohibiting Plaintiff from exercising these rights outside of his cell were rationally related to their interests in safety and security. Defs.' Mem. of Law at p. 16–17; Harper Decl. at ¶¶ 12 & 21.

As noted above, it is axiomatic that a prison facility has a legitimate penological interest in maintaining safety and security within the facility. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. at 350–51. Defendants point out that a Kufi provides an inmate with a place to store or transport contraband and/or weapons. *See* Harper Decl. at ¶ 12. Likewise, removing Plaintiff from his cell, escorting him to a separate area for prayer, and guarding him during his prayer five times a day would be a severe burden that would jeopardize the safety and security of other parts of the facility because it would require the Facility to re-assign guards from other areas of the prison where they

are needed most. *Id*. It is certainly rational to ban the wearing of items that could potentially facilitate the concealment of contraband such as drugs and weapons – items which present clear safety concerns within the confines of a correctional facility. Likewise, it is equally rational to prohibit prayer outside of an inmate's cell where providing that service would require dedicating an inordinate amount of resources to the care of two inmates at the expense, safety, and security of the facility's other officers and inmates. Thus, we are satisfied that Defendants have met their burden of establishing that the policies at issue were rationally related to these legitimate penological interests. *O'Lone v. Estate of Shabazz,* 482 U.S. *at* 349–50 (noting that the reasonableness standard was designed to "ensure the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration, and avoid[] unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree") (internal quotations and citations omitted). Thus, the burden now shifts to Plaintiff to prove that the policies are irrational. *See Ford v. McGinnis*, 352 F.3d at 595-96.

As a result of Plaintiff's failure to respond to Defendants' Motion, we have only the arguments put forth in Plaintiff's Complaint from which to cull opposition to Defendants' Motion. Even when construed liberally, and granting Plaintiff every reasonable inference, Plaintiff's Complaint standing alone is simply insufficient to warrant a finding that Defendant's policies were irrational or that the accommodation offered to Plaintiff was unreasonable. Rather, based on the record before us one could easily conclude that providing Plaintiff with a temporary barrier or shield to cover the toilet while he prayed or wore his Kufi while in his cell was a reasonable accommodation. The accommodation provided a readily available alternative to exercising those rights outside of his cell, and imposed a minimal if almost non-existent burden on the facility's staff

and other inmates. Moreover, Plaintiff has failed to offer any argument or evidence that a more reasonable accommodation could have been made or that the policy implemented by Defendants was irrational. *See Turner v. Safely,* 482 U.S. at 89–91; *see also Jackson v. Mann*, 196 F.3d at 320. Therefore, because Plaintiff has failed to meet his burden, we recommend that Defendants' Motion for Summary Judgment as to these two claims be **GRANTED.**

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 43) be **GRANTED**, and this entire action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: March 4, 2013
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge